[998 NE2d 1050, 976 NYS2d 426]

GIUSEPPE ROMANELLO, Appellant, v INTESA SANPAOLO, S.P.A., et al., Respondents.

Argued September 9, 2013; decided October 10, 2013

### APPEARANCES OF COUNSEL

*Di Santo Bowles Bruno & Lutzer LLP*, New York City (*Maury B. Josephson* of counsel), and *Law Office of Maury B. Josephson, P.C.*, Melville, for appellant.

*Gilmartin, Poster & Shafto LLP*, New York City (*Michael C. Lambert, Richard A. Bertocci* and *Andreas Seuffert* of counsel), for respondents.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division, insofar as appealed from, should be modified, without costs, by reinstating the second cause of action and, as so modified, affirmed.

Plaintiff Giuseppe Romanello is a former executive of the financial services firm Intesa Sanpaola S.p.A. (Intesa). Plaintiff worked for Intesa and its predecessor for approximately 25 years when he became ill and unable to work. He was diagnosed with a series of disorders including major depression.

After plaintiff had been absent from work for almost five months during which time Intesa continued to pay his full salary, Intesa, through its counsel, sent plaintiff's counsel a letter, stating, among other things, "Mr. Romanello's FMLA [Family Medical Leave Act] expires on June 3, 2008 and the bank would appreciate knowing whether he intends to return to work or to abandon his position." Plaintiff's counsel responded, stating, in part, that "Mr. Romanello has, since on or about January 9, 2008, been suffering from severe and disabling illnesses that have prevented him, and continue to prevent him, from working in any capacity, let alone in the capacity in which he had been serving [Intesa]" and that Mr. Romanello "has not at any time evidenced or expressed an intention to 'abandon his position' with [Intesa]. Rather, he has been sick and unable to work, with an uncertain prognosis and a return to work date that is indeterminate at this time." Intesa responded by terminating plaintiff's employment, although he continued to seek and eventually received long term disability payments under a policy of insurance provided by his employer.

Plaintiff thereafter commenced this action including claims that Intesa discriminated against him on the basis of his disability in violation of the New York State Human Rights Law (*see* Executive Law § 296 [1] [a]) (the State HRL) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]) (the City HRL). Plaintiff's complaint alleged separate causes of action for the State HRL (first cause of action) and the City HRL (second cause of action). Defendant moved to dismiss pursuant to CPLR 3211 (a) (1) and (7), and submitted the parties' letters as documentary evidence supporting dismissal. Supreme Court, among other things and as relevant here, dismissed and severed the first and second causes of action. The Appellate Division affirmed, with two Justices dissenting in part and voting to reinstate the first and second causes of action (97 AD3d 449 [2012]). Plaintiff appealed as of right pursuant to CPLR 5601 (a) from so much of the Appellate Division order as affirmed the dismissal of the severed first and second causes of action.

In the context of employment discrimination, the term "disability" as defined in the State HRL is "limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation

sought or held" (Executive Law § 292 [21]). A "reasonable accommodation" means actions taken which permit an employee with a disability to perform in a reasonable manner activities involved in the job, and "do not impose an undue hardship on the business" (Executive Law § 292 [21-e]). To state a claim under the State HRL, the complaint and supporting documentation must set forth factual allegations sufficient to show that, "upon the provision of reasonable accommodations, [the employee] could perform the essential functions of [his or] her job" (*Staskowski v Nassau Community Coll.*, 53 AD3d 611, 611 [2d Dept 2008]; *Pimentel v Citibank, N.A.*, 29 AD3d 141, 146 [1st Dept 2006], *lv denied* 7 NY3d 707 [2006]). Indefinite leave is not considered a reasonable accommodation under the State HRL (*cf. Phillips v City of New York*, 66 AD3d 170, 176 [1st Dept 2009] [unlike "the State HRL (as well as the ADA) . . . there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation" under the City HRL]).

Here, neither plaintiff's communications with his employer just prior to his termination nor the complaint filed one year later offer any indication as to when plaintiff planned to return to work. Instead, plaintiff informed his employer that he had not expressed any intention to "abandon" his job and that his return to work date was "indeterminate"; the complaint merely alleges that plaintiff sought "a continued leave of absence to allow him to get better and return to work." "Indeterminate" means "not definitely or precisely determined or fixed" (Merriam-Webster's Collegiate Dictionary [11th ed 2008]). Contrary to the dissent's view, we are not taking a one-sided view of plaintiff's claim. The only conclusion to be reached by plaintiff's own description of the circumstances is that he hoped to keep his job by requesting an indefinite leave of absence. Thus, even construing the complaint liberally and according plaintiff "the benefit of every possible favorable inference" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002]), plaintiff fails to state a claim under the State HRL and the first cause of action was properly dismissed.

The City HRL, on the other hand, affords protections broader than the State HRL (*see Phillips*, 66 AD3d at 176; *Williams v New York City Hous. Auth.*, 61 AD3d 62, 66 [1st Dept 2009]; Local Law No. 85 [2005] of City of NY § 7, amending Administrative Code § 8-130 [declaring that the provisions of

the City HRL "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed"]). Accordingly, we have held that the provisions of the City HRL should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]).

Unlike the State HRL, the City HRL's definition of "disability" does not include "reasonable accommodation" or the ability to perform a job in a reasonable manner. Rather, the City HRL defines "disability" solely in terms of impairments (Administrative Code of City of NY § 8-102 [16]). The City HRL requires that an employer "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer]" (*id.* § 8-107 [15] [a]). Contrary to the State HRL, it is the employer's burden to prove undue hardship (*Phillips*, 66 AD3d at 183). And, the City HRL provides employers an affirmative defense if the employee cannot, with reasonable accommodation, "satisfy the essential requisites of the job" (Administrative Code § 8-107 [15] [b]). Thus, the employer, not the employee, has the "pleading obligation" to prove that the employee "could not, with reasonable accommodation, satisfy the essential requisites of the job" (*Phillips*, 66 AD3d at 183 [internal quotation marks omitted]).

Plaintiff, through his letter from counsel, made his disability known to Intesa (*see* Administrative Code of City of NY § 8-107 [15] [a]). Intesa did not meet its obligation under the City HRL to plead and prove that plaintiff could not perform his essential job functions with an accommodation (*id.* § 8-107 [15] [b]). Because Intesa made no such allegation or showing on its CPLR 3211 motion to dismiss, the City HRL claim should not have been dismissed.

ABDUS-SALAAM, J. (dissenting in part). Plaintiff clearly satisfied the liberal pleading requirements set forth in the City Human Rights Law (City HRL) (*see* Administrative Code of City of NY §§ 8-102 [16] [a]; 8-107 [15] [a]), and as the majority determines, the second cause of action should survive dismissal. However, the allegations in the complaint, construed broadly in favor of plaintiff (*see e.g. Leon v Martinez*, 84 NY2d 83, 87 [1994]), are also sufficient to state a claim under the State Human Rights Law (State HRL) (*see* Executive Law § 296 [1] [a]), and Intesa's documentary evidence failed to adequately refute

those allegations. In holding otherwise, the majority necessarily construes the evidence *against* plaintiff, which is antithetical to our review on a motion to dismiss (*see Leon*, 84 NY2d at 87). Because dismissal of plaintiff's State HRL claim is not warranted under CPLR 3211 (a) (1) or (7), I would reinstate the first cause of action and, therefore, I respectfully dissent.

When plaintiff informed Intesa of his disability in early January 2008, Intesa continued to pay plaintiff's salary pursuant to its six-month salary continuation policy. The company also obtained short-term and long-term disability insurance contracts for plaintiff with Prudential Insurance Company of America. Once plaintiff had been out on disability for about 4½ months, Intesa's counsel informed plaintiff's counsel that, according to Prudential, plaintiff was no longer entitled to short-term disability payments, and Intesa "would appreciate knowing whether [plaintiff] intends to return to work or to abandon his position."

Plaintiff's counsel responded by letter, stating that plaintiff "has . . . been suffering from severe and disabling illnesses that have prevented him, and continue to prevent him, from working in any capacity, let alone in the capacity in which he had been serving" as an executive for Intesa. The letter explained that, although plaintiff "remains unable to return to work in any capacity because of his disabling conditions," he "has not at any time evidenced or expressed an intention to 'abandon his position' with [Intesa]. Rather, he has been sick and unable to work, with an uncertain prognosis and a return to work date that is indeterminate at this time." The letter asserted that, in any event, plaintiff was entitled to continued payments pursuant to Intesa's salary continuation policy, and sought confirmation defendant would provide this benefit for the full six months.

In response, Intesa terminated plaintiff's employment, and plaintiff thereafter commenced this lawsuit alleging causes of action under both the State and City HRLs. Plaintiff's complaint states, as relevant here, that (1) plaintiff was disabled within the meaning of both statutes; (2) plaintiff's requests for short- and long-term disability and salary continuance from Intesa "were requests for reasonable accommodation of his disability through a leave of absence to allow him to recover and return to work"; and (3) Intesa was put on notice that plaintiff sought such an accommodation by the letter from counsel, which asserted that plaintiff did not intend to abandon his position. The

complaint further alleges that Intesa "failed and refused . . . to engage in an interactive process with [plaintiff] concerning reasonable accommodation" before terminating his employment.

When assessing the adequacy of a complaint in light of a CPLR 3211 (a) (7) motion to dismiss, our role is "to determine whether plaintiffs' pleadings state a cause of action" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]), not whether the plaintiff has a cause of action (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). To accomplish this task, "we [must] liberally construe the complaint," accept the facts alleged in it as true, and accord the plaintiff "the benefit of every possible favorable inference" (*511 W. 232nd Owners Corp.*, 98 NY2d at 152; *see e.g. Simkin v Blank*, 19 NY3d 46, 52 [2012]; CPLR 3026). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*511 W. 232nd Owners Corp.*, 98 NY2d at 152 [internal quotation marks omitted]; *see Guggenheimer*, 43 NY2d at 275).

Plaintiff's complaint, on its face, is sufficient to withstand a CPLR 3211 (a) (7) challenge to his State HRL cause of action. The complaint alleges that plaintiff suffered from a disability within the meaning of the State HRL (*see* Executive Law § 292 [21]), and that Intesa was aware of his disability. Plaintiff also pleaded that when he requested an accommodation through a leave of absence (*see Phillips v City of New York*, 66 AD3d 170, 179-180, 182 [2009]), Intesa terminated him before considering whether his proposed accommodation was reasonable (*see* Executive Law § 296 [3] [a]).

Under the State HRL, an "employer has a duty to move forward to consider accommodation once the need for accommodation is known or requested" (9 NYCRR 466.11 [j] [4]; *see Pimentel v Citibank, N.A.*, 29 AD3d 141, 149 [1st Dept 2006], *lv denied* 7 NY3d 707 [2006]). The complaint expressly alleges that Intesa failed to undertake this duty and, instead, terminated plaintiff immediately after receiving counsel's letter (*see Phillips*, 66 AD3d at 176 ["A failure to consider the accommodation . . . is a violation of Executive Law § 296 (3) (a)"]). In response, Intesa never alleged that it considered plaintiff's proposed accommodation or that such accommodation would cause it undue hardship (*see* Executive Law § 292 [21-e]). Accordingly, the complaint adequately states a cause of action under the State HRL.

Turning to Intesa's CPLR 3211 (a) (1) motion to dismiss on the ground that the action is barred by documentary evidence, "such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002], citing *Leon*, 84 NY2d at 88). Thus, the issue here is whether the parties' letter correspondence, submitted in support of the motion to dismiss, conclusively establishes that plaintiff's State HRL cause of action has no merit (*see Held v Kaufman*, 91 NY2d 425, 430 [1998]).

Applying this standard, Intesa's motion must fail. The letter from plaintiff's counsel contains contradictory statements made with equal force: plaintiff "remains unable to work in any capacity" for an "indeterminate" period, and he does not intend to " 'abandon his position' " with Intesa. Reading these statements in the light most favorable to plaintiff, as we must at this early stage in the litigation, it is not clear whether a reasonable accommodation would have been possible, but the letter does not *foreclose* the possibility that an accommodation reasonable to both plaintiff and Intesa could ultimately have been reached (*see Phillips*, 66 AD3d at 176). Thus, Intesa's evidence does not conclusively refute the allegations in the complaint or provide Intesa a defense as a matter of law, particularly one to account for its failure to consider plaintiff's accommodation request (*see id.*; 9 NYCRR 466.11 [j] [4]).

By characterizing the letter as demanding "indefinite leave" (majority mem at 884), the majority resolves the letter's ambiguities in favor of Intesa, rather than plaintiff. This runs counter to our usual review of a CPLR 3211 motion (*see Leon*, 84 NY2d at 87), and lessens Intesa's burden to provide documentary evidence that *conclusively* refutes plaintiff's allegations (*see id.*; *Goshen*, 98 NY2d at 326).

I see no reason to embrace the majority's one-sided view when the letter is not susceptible to one unambiguous reading. Although the letter states that plaintiff "remains unable to return to work in any capacity," it does not state that plaintiff is seeking indefinite leave or otherwise indicate that he would *never* be able to return to work. The letter instead explains that, because plaintiff is still sick, his return to work date is presently "indeterminate." The letter also makes clear that plaintiff does not wish to " 'abandon his position' " with Intesa, an assertion which, at a minimum, calls into question the majority's notion

that plaintiff never intended to return to work. Moreover, given that the letter inquired into plaintiff's continued eligibility to receive his salary under Intesa's policy, it seems likely that, as later alleged in the complaint, plaintiff was requesting a temporary rather than a permanent leave of absence.

The majority holds that, under the State HRL, indefinite leave is not a reasonable accommodation as a matter of law. I disagree. A request for indefinite leave does not categorically excuse an employer from its "duty to move forward to consider [that] accommodation" (9 NYCRR 466.11 [j] [4]). Thus, even if plaintiff's letter could be construed as requesting indefinite leave, Intesa was still required to consider that request rather than simply terminate plaintiff without further discussion (see id.; Phillips, 66 AD3d at 176; Pimentel, 29 AD3d at 149).

In sum, I concur with the majority's disposition of the second cause of action related to the City HRL, but for the reasons stated, I would reinstate the first cause of action related to the State HRL.

Judges GRAFFEO, READ, SMITH and PIGOTT concur; Judge ABDUS-SALAAM dissents in part in an opinion in which Chief Judge LIPPMAN and Judge RIVERA concur.

Order, insofar as appealed from, modified, without costs, by reinstating the second cause of action of the complaint and, as so modified, affirmed, in a memorandum.